Byron against the Department of Veterans Affairs. Mr. Reines, are you ready? Thank you, Your Honor, and may it please the Court, Edward Reines from Waugatcho on behalf of Lady Byron. At the outset, Lady Byron would like to express her appreciation to the panel for handling this appeal on an expedited basis. We know the Court has a busy docket, and we appreciate the compressed time frame. How has this been pending for 40 years? I don't understand how a case could pen for 40 years. There's a long answer to that, but basically the record is conclusive that the claim was properly filed as of 1971. I don't know how much detail you want to go into the history, but there was a service claim and a non-service claim submitted in 1971 that's not disputed, and the service claim was simply not adjudicated. Everyone agrees it's been just pending for 40 years. This isn't a case where it was closed, there was a failure to appeal, and it was reopened at some point? Right. There's not that situation pending here. The gist of the answer to that, without getting into too much of the bits and bytes, which I can get into as we need to, is that the applicant couldn't prove radioactive exposure, or didn't feel that they could prove it, because of the confidential and secret nature of the test sites in the Nevada Desert and New Mexico, and Utah for that matter. For example, if you look at the 1968 letter from the deceased, he states, I can't say what happened, but I can say that I had to wear a badge, I can say some things. He puts in there certainly enough that you can tell that he's saying that he was at a radioactive site, but you couldn't go out and get an affidavit from people saying he was there and it was a radioactive site because of the sense that that was... I think that's an important point that you brought up, because wouldn't he be required to prove that, to prove entitlement to service connection, the direct kind of service connection that he's asking for prior to 1988? You need to show that as of 1971, what you need to show is that in fact there was service connection. That's all you need to show now. I think that's agreed and undisputed by the government. I think it's a presumption as of 1988 for the non- lymphoma, Hodgkin's or non-Hodgkin's lymphoma, as of 1988, and you're actually asking for benefits to go back to 71, as I understand. That's correct, and we're entitled to rely on present day evidence to prove direct service connection from 1971. That's undisputed. Right, but the problem is that evidence hasn't been submitted because up until this point in time, as I understand it, the case proceeded on the conceded presumption for the post 88 stuff, but what I'm suggesting is isn't there an open question of fact, which really inhibits our ability to decide this case for the time period from 71 to 88, because you have to prove an extra element for that. We clearly have to prove an extra element for that. There's no doubt about that. The evidence is loaded in the record. What happened was in 1996, based on pressure of the Congress, there was a decision made to allow applicants in this situation to rely on the fact that there was radioactive atmospheric testing going on that exposed people seeking benefits, and so at that point, Lady Byron put together evidence. This doesn't answer your question completely, but it's important background. She then was able to put in all the declarations, affidavits. They located someone who was an eyewitness to the fact that he was present at that site. So there's a ton of evidence in the record. It didn't come into the record until after 1996, which answers your 40-year question. Did the board make any fact findings or sort of evaluate this evidence? No. So that's clearly why we're here. Just to remove any mystery about why we're here, it was undisputed that the board failed to reach the direct claim for benefits based on actual proven service connection. It failed to reach that because it made its third or fourth error, depending on how you count it, on threshold questions. At one point, it thought you could only get one year back from 1996. At another point, it thought in its latest board decision, which is the one that's directly on appeal, the board thought that for some reason that it didn't have the ability to go back to evaluate the 1971 claim. The government and Lady Byron agreed before the Court of Appeals for Veterans Claims that there was legal error committed by the board and that the board had failed to reach a question which it was obligated to reach. But the question, as I understand it before us, is whether the Court of Veterans Claims should have then stepped into the shoes of the board and done it for them since they failed to do it. I even think that you're intimating that you want us to do it on appeal, which seems a bit much to me. But as I understand the crux of the argument, it's that you wanted the court, and you think it's an error, for the Court of Veterans Claims not to have made the fact findings that are not made by the board. Is that right? I would never cast it that way, but it's one way of stating the issue. I mean, the way that the issue we framed to the Court of Appeals for Veterans Claims was that it believed that it had no authority as Your Honor may believe, but I'm going to attempt to dissuade you, that it had no authority to look at the record and say the record is complete, there's only one legally sufficient answer, it makes no sense to remand, and therefore we rule for it. The court said very specifically, while we so the argument, just be clear, the Court of Appeals for Veterans Claims the only argument that was made was we said you have to reverse, this is ridiculous, the guy was obviously exposed to radiation, unless you think ten people are lying. And the government didn't even contest that. You didn't say he was obviously exposed, I thought you said that it was conceded, that that was no longer an issue. Was there a line drawn between positions? As the direct service connection, what happened was we thought the record is one-sided. There's a ton of evidence on one side, there's no evidence on the other side. So when we went to the Court of Appeals for Veterans Claims, we said, we're entitled to a reversal, not a remand, because there's no there's nothing going on here. Give the lady her benefits after 40 years. There's been three board errors, refusing to reach the right issue. The government's position was, this isn't a reversal, this is a remand situation. The government's position was the Court of Appeals for Veterans Claims cannot it's not their power to look at the record and say, the record's complete, there's only one answer, therefore we order the issuance of benefits. The only debate was remand or reversal at the Court of Appeals for Veterans Claims. So the issue that before you I think stated more neutrally is, does the Court of Appeals for Veterans Claims have the legal authority to look at a record of the board below, say the record's complete, there's only one answer, benefits is the answer, you have to give them benefits. If that's true, how do you get around Hensley? Hensley is not helpful on this question. Really? Not even helpful? Right. Not helpful to you? I think not helpful to anybody looking at the question attempting to be enlightened. In Hensley, the issue was it was a legal question based on what this Court described as a heavily based factual determinations. And the Court in that case, the Court of Appeals for Veterans Claims unambiguously and without any qualms said, we're de novo reviewing this matter and we've determined on our de novo review, including the underlying fact questions, that the right answer is A, not B. Therefore, we are reversing and this Court said you can't do that. You can't review de novo the factual record. So I think to re... But your position seems to be you can't de novo review the factual record unless it's a really easy call. I think the way to re-center the analysis... Is that fair? Yeah, that is somewhat fair, but let me put it in a more legalistic and more formalistic terms. So I don't think we're as... I think we've got a guiding light here that's pretty clear, and it's the Ventura case by the Supreme Court. In Ventura, the Supreme Court faced a issue with the Ninth Circuit, and this has been a repeated issue over time with the Ninth Circuit, where it reverses, and this has actually been sort of in the popular press, where it reverses alien immigration issues in favor of the alien, notwithstanding the INS decision. And the Supreme Court's reversed the Ninth Circuit a few times on that, saying you can't substitute your judgment for the INS. Kind of like some of the things we've heard. And what they said in the Ventura case was, you can't do it except in rare circumstances. And the question is, what's rare circumstances? There's a large body of law. I don't think we're as... I think we're not as far off into the forest as people might think we are. I think there's a lot of guiding precedent. There are, so far at least, since that Ventura case, the Ninth Circuit, the Fourth Circuit, the Second Circuit, and I could give case names, the Tenth Circuit, have all held that where a remand would be futile, needless, pointless. There's any number of linguistic formulations. There's no need to bring it back down. I read your cases and there are a couple that seem to have fact patterns that are more or less analogous to this one. The bulk of them seem to be cases in which the agency in question had already made a factual determination and the body, the reviewing court in each of those cases, Court of Appeals, was saying they were so clearly wrong in their factual determination that it's not necessary to remand. We can just direct the entry of judgment or the issuance of an award, which seems to me different from this case in which there has been no factual finding. Had the board said we find, for the government in this case, there's no question that the CAVC would have been entitled to say wrong, wrong, wrong, and not only are you wrong, but we're simply going to direct that the DVA pay this she's entitled. But that seems to me rather different from this fact pattern. So there's two issues there. One is the higher level legal abstraction is, is it feudal, is it bureaucratic ping pong? So to me that doesn't, whether it was processed or not by the agency below, if the appeals court, I'm not asking, if the appeals court's in a position to say there's only one legally correct answer, it doesn't to me I don't think the distinction you're drawing has saliency. Yeah, but then it's very difficult for me then to say why it is that the appeals court is not simply finding facts, because the appeals court, we, the three of us, might conclude in any given case that there's really only one factually supportable answer given the record, even when an agency hasn't made its findings, but we normally would not regard that as exceptional circumstances of the sort involved in the language issue. I think you make exactly the determination that we're proposing here in cases all the time. Whenever you find judgments as a matter of law, it's just simply looking at a record and saying is there only one legally appropriate conclusion with all the regular standards applied, so whether it's abusive, you know, whatever standards you want to impose, whatever legal standards you want to impose, it's saying if the conclusion was opposite to this, we would have to reverse. But I think that what you're saying then is any time an agency finds, any time a reviewing court finds, even when an agency has not made factual findings, if the reviewing court can say that had a factual finding been made, it would not be supported by substantial evidence, that court can then direct the entry of judgment. If the record, there's two requirements, this is how I would create the test. I think this is a serious, I mean, I know you take it seriously, but I mean, I think there's a real question here under Ventura and all the cases we cited is how do you deal with this situation? I don't think it's, I don't think this can ever happen, because I don't think you want to be in the position of saying that the agency always has to review the question before the appeal court can step in and say no, you must rule this way. I don't think anyone would accept that. If the record's complete and there's only one legally acceptable conclusion, so you need record completeness in terms of evidentiary record, which we have here. So you're really seeking some sort of generalized modification of Hensley rather than arguing that in this particular case, in this particular situation, with all of the unusual circumstances, at least here, the situation, I'll say the undisputed situation, is so  plus the discretion is there in situations this extreme. In Hensley, they weren't purporting to engage in the mode of analysis that I'm proposing. They weren't saying no court could find this way, we're assuming everything's, you know, we're allowing for every consideration to have gone the other way. So Hensley's just if you read the decision, they say it's a heavily based factual determination and the court waded into the facts without applying this kind of, this is not a wild-eyed appellate role. The idea here is cutting through it. And there's particular aspects of the veteran system which I think strongly support this. One, it's pro-claimant. I mean, if they can do this in all these other areas of the law. Two is, there's the 7261A2 allowing the appellate court, the CAVC, to compel action unlawfully withheld or unreasonably denied. So I think there's specific reasons within this area of the law that support this. Can I ask a question? I want to make sure I have some time to respond. This is on an issue that wasn't disputed, so I don't want to use up Mr. Reines' time on this. No, no, please. Both parties have agreed that there is jurisdiction in this court over this case, notwithstanding the general rule that remands don't we don't have jurisdiction to review remand orders. And looking at the three-part test under Williams and Adams, this may be a little unfair. Which the court knows well. This may be a little unfair because this is not an issue that was... No, no, I'm prepared for it. Okay, very good. The one of those three issues that seems to me to be perhaps open to question is the second, which if I have it right is the resolution of the legal issues would adversely affect the party seeking review. Now the question is obviously in every case a remand when the party wants a resolution without a remand will adversely affect the party in the sense of creating delay. So it would seem that delay itself wouldn't be the kind of adverse effect that we're talking about unless you think otherwise. Let me address that. One is I don't think this is distinguished from your Adams opinion. I think in Adams it was the same situation so I don't see a distinction from Adams. But more importantly here I think it's beyond question because in the declaration in the record from February of this year it's clear that Lady Byron's of declining health. She's got a year left to live and so time is of the essence.  You go a remand, you're back in line at the court below and now the government's suggesting for the first time in front of this court that they can reopen the record and try to find someone that's going to say that this guy wasn't where five people put him. Perhaps a different theory. Did I misunderstand? No, no, you're exactly what I'm looking for. But I'm thinking, I'm wondering whether a different approach, not straight down the line with Williams and Adams, might be to say that the legal issue that you have raised, that is to say whether the CAVC has the authority to make a decision in the first instance notwithstanding the absence of factual findings by the board, is a legal issue that wouldn't be preserved if a remand were sent back and therefore it's kind of like a Cohen against beneficial finance. Right, that's the third factor so maybe that's a reconsideration of the Williams test, but that's the third factor in the Williams test. Okay, well, I'm thinking whether that factor covers also the adverse effect. It may be that. Because the effect, well, alright. So, but that's the third factor which we clearly satisfy and I would suggest that we satisfy all three. Alright, well let me finish up, but I will say that the real issue, just so we don't lose sight given this the Court of Appeals for Veterans Claims said, you may be right that there's only one conclusion. You may be right that all the evidence is on one side and there's zero. I mean, we're not talking about muddiness that requires some agency expertise. It's like this. Even there, we have no power to consider a reversal. So we're not even, not only did they not make a fact finding, they're refusing to even look at whether the record dictates only one outcome to such a degree that it's very important for the court to explain to the court, it has the ability to look at that. This court may disagree what the circumstances are, but freeing it from that constraint is an important thing. Thank you, Mr. Rhodes. We will save some rebuttal time. Ms. Hogan. Good morning, Your Honors. May it please the Court. The Veterans Court did not commit legal error by remanding the case to the board to evaluate the evidence under the theory of direct service connection. The Veterans Court cannot reverse factual findings, which were never made by the board. And in order for Ms. Byron to receive the remedy she claims she was entitled to before the Veterans Court, the Veterans Court would have needed to make a factual finding that there was radiation exposure. It would have needed to make a factual finding that there was a nexus between... But do you agree with Mr. Rhinus that that is the fundamental question before us as to whether or not the Veterans Court has the power to look at facts, whether or not the facts are so extreme or accompanied by, in this case, concessions and releases of secrecy and a lot of other things, that does the Veterans Court seek such power or are you just telling us that because of Hensley that ends it? The Veterans Court does not have that power because by statute it is limited to reviewing the decision of the board. And if there's no board decision regarding Ms. Byron's theory of direct service connection retroactive to 1971, then the Veterans Court doesn't have the power to make those factual findings. We are not disputing that whether... Didn't the board at one point actually find that the veteran was exposed to... Oh, they didn't establish he was but then the RO conceded it later on? So we have a very early finding in the long history of this case. I do not believe there has ever been a factual finding of actual radiation exposure. There was a concession for purposes of the 1988 law and so there was a granted service connection under that theory but if Ms. Byron wants to pursue a direct service connection theory which would entitle her to effective date, perhaps as early as 1971, then she has to meet all she has to prove all of those elements of direct service connection. What was the substance of that concession with respect to the presumption based service connection? Right, well it's a little muddled but under regulation where radiation exposure can't be affirmatively proven but the service records don't indicate one way or the other, then radiation exposure will be conceded for purposes of that regulation. But that concession is relevant only to that one theory of service connection. Even if, as Ms. Byron suggests, the weight of the evidence is so one-sided as to require a finding of direct service connection, that itself is a factual finding that the board must make in the first instance. You know, a lot of the cases and I suppose the language from Ventura is among them do have language that leave at least a little breathing room for certain exceptional cases or extraordinary circumstances and so forth in which presumably courts can do more than simply send the case back to the agency. Do you take the position that that breathing room does not apply to the CAVC with respect to its review of BVA or can you imagine circumstances in which the CAVC could decide a factual question notwithstanding the absence of a prior decision of the factual issue by the board? Off the top of my head right now, Your Honor, I cannot conceive of a situation where the Veterans Court would be empowered to do that and the reason that I say that is that, again, the Veterans Court's jurisdiction is strictly limited by what the board has done, as this court has said. Except that in that regard, 7261 looks an awful lot like the ordinary APA type review of other agencies by other courts. I mean, there's nothing that I see here that says to the court that your reviewing authority over the board is circumscribed in a way that's much tighter than would be the case for, let's say, a district court reviewing the social security determination or a court of appeals reviewing the BIA. So since in those contexts we have language from the court saying there are exceptional circumstances in which this might be possible and a couple of cases in which those exceptional circumstances have been invoked, I'm wondering why it is that that kind of principle of exceptional circumstances wouldn't be equally applicable here. 7261 permits a reversal of findings of fact where they're clearly erroneous, but that presumes that there have been findings of fact by the board. Well, the APA permits reversal of findings of fact on a showing that they aren't supported by substantial evidence. That may also be thought to presume the actual pre-existing findings of fact, but that's not always the way it's done. Let me propose to you a and question you as to whether you would consider this an exceptional circumstance. Suppose the government came in and before the court conceded that, yes, this evidence does establish that he was present there, but then said, but nonetheless we think you have no power to direct the board and the DVA to grant benefits. Would you agree that would be an exceptional circumstance falling within Ventura and so forth? If the secretary were going to affirmatively stipulate or concede facts or findings of fact which would be beneficial to the veteran, perhaps in that situation that would be a situation where the veterans court could act directly rather than remanding to the board. It's certainly not the situation that's here because there certainly are factual questions that still need to be answered and the secretary has not conceded radiation exposure or nexus or effective date for that matter for purposes of a theory of direct service connection. Hensley really does answer the question that's presented to this court and the characterization that Hensley involved minute assessment of detail I don't think is a relevant distinction to draw from here because again if there's going to be factual findings to be made by the veterans court it would still need to be reviewed for probative value, for competency, for the basis upon which the doctor's opinions rest. All of those are factual evaluation. Those are not the things that the government is suggesting need to be resolved still in this case. The only thing I understand from your brief that you've raised was whether or not he was exposed to radiation. Am I wrong about that? Is the government contesting that there still remain disputes of fact over all of these medical issues that you just enunciated? I want to be very clear that the secretary is not taking a position one way or the other about how the evidence should be evaluated because we're just not in that position right now. There has to be a finding of in-service injury that's never been found and there has to be an evaluation of the medical opinions to see whether it meets the standard for nexus. I don't understand this because there is a presumption in place now that these two things are linked. I don't understand how you can say that there needs to be an establishment of causation or medical nexus or any of these other things. That is dispensed with. It has been fully resolved in favor of the veteran in this case. The only thing I understand the government to have presented is that there remains a potential open issue about whether he was or was not exposed to radiation. The presumption that there's a nexus between radiation exposure and lymphoma is a result of a statute that was enacted in 1988 and is only going forward. So if Ms. Byron wants to demonstrate direct service connection to 1971, then she still has to produce evidence of nexus. It may very well be, Your Honor, that that is an easy thing for her to meet and it may be that the medical opinions that are in the record meet that standard, but nonetheless that step of a finding of nexus still has to be made by the board. So she has to prove actual causation. Yes, Your Honor. And the government disputes whether or not that's been done? There has never been a finding of nexus. I didn't ask whether there was a finding. I'm asking whether the government disputes it. It seems to me if none of the facts are in dispute and the government were to say as much then I don't see why the Court of Veterans Claims couldn't then render judgment. Again, Your Honor, in this adversarial appellate stage, we are not taking a position as to what... This is supposed to be an adversarial process. This whole thing is supposed to be non-adversarial. Absolutely, Your Honor, and that is why it should be remanded to the board, which is a non-adversarial proceeding, so that it can be adjudicated by that non-adversarial board. I'm trying to figure out whether there's anything left for them to adjudicate, counsel, and you're just sort of talking in circles about it. I don't understand whether the government disputes anything at all that the appellant is arguing she's entitled to. We think there's still an open question as to radiation exposure. There's still an open question as to nexus, and there's still an open question as to effective date. None of those things have been addressed by the board. Addressed by the board is not what I'm asking. I'm asking whether the government disagrees with her established proof on those points. Not whether the board has made those fact findings, but whether the government disagrees. Because if the government was to come forward and issue a whole bunch of concessions and admissions like the concession they made with regard to the 1988, post 1988 exposure, then there'd be no point to send it all back. So I'm wondering whether you think the government believes she's entitled or not. And if not, why not? We think there are still disputes regarding radiation exposure and nexus. Okay, so you think there's a dispute regarding radiation exposure, so the government's position is that there exists evidence in the record somewhere that he wasn't exposed to radiation? There is evidence in the record that at least suggests that there's a factual dispute and that specifically that there are no dissymmetry records of the military department that ever show that Mr. Acheson was issued a dissymmetry badge and there are service records for the Upshot Nod Hole project that he contends that he was there that never show him signing in or signing out.  The documentation in his file is the evidence the government would submit that counters whatever testimony was presented on the other side and that's why you think this is still a live dispute and need a factual resolution. Is that a fair characterization? That's fair, Your Honor. And simply because this was raised, mentioned by Ms. Byron's counsel when this case is remanded to the board, because it's a remand from the Veterans Court, it is treated in an expedited manner so she doesn't go to the end of the line and if she wants to tell the board that she's not intending to submit any additional evidence, then again that claim would be further expedited. So the claim once it's returned to the board should be decided in a very expeditious manner and I want to emphasize that to the court that we certainly understand that there's an urgency. So just to be clear, your position is that the court has no authority even to look and see if any facts are in dispute? Yes, Your Honor because that is a factual finding. The conclusion and I think this court may have intimated this in Mayfield, that the conclusion that the evidence is so one-sided as to only support one conclusion is itself an evaluation of the record and a factual finding. So that's not something that can be done in the first instance by the Veterans Court. So your position is that it's always an automatic remand no matter what the arguments and what the record might contain? If there have been no factual findings by the board, then yes. So you say that the court, just to be clear, does look and see if the issues were the subject of factual findings? Absolutely, Your Honor. That is the role of the Veterans Court to review the findings of fact of the board for clear error and may reverse those findings if the finds are clearly erroneous. But the power of the Veterans Court to reverse those factual findings on a clear error standard presumes that there were findings of fact for the Veterans Court to review. Okay, but you're telling us that the Veterans Court has no authority to look and see whether in view of the 1988 statute, the affidavits and so on, that there may have been clear error in the board's factual finding. I'm suggesting that there were no factual findings by the board. I don't think there's any dispute that there were no factual findings by the board. The board decided against the board years ago. In denying the requested compensation or in denying the time of entitlement. The error that the board committed was simply not recognizing as a legal matter that she could pursue a theory of direct service connection that would entitle her to an earlier effective date under a direct service connection theory. And because of that legal error, there was never any examination of the facts to determine whether that theory of direct service connection could be sustained. Okay, thank you. Thank you, Your Honor. Mr. Ryanson? Yes. Thank you. Returning to the legal issue, Judge Bryson, so the Watson case in the Second Circuit and the Hussain case in the Fourth Circuit are two examples of appellate decisions in the short time since Ventura issued where the appellate court validated a reversal instead of a remand where the issue had not been reached. In Watson, there was no adequate statement of reasons by the agency, so that's kind of our situation. There were reasons stated, but they were wrong. In that case, they were not adequate and they weren't there. In Hussain, they just hadn't reached what in that case was more of a legal issue, but they hadn't reached that. So, and I just, the point in NLRB, the earlier Supreme Court case, that there's no need for ping pong or pointless remands applies whether the lower body reached the issue or not. There's just no intellectual reason. And there's no intellectual reason why an appeal court, whether it's a CAVC or this court, can't look at a record and say, under the appropriate standards, there's only one legal outcome. I don't get where there's an issue there. The Moysa case, which is a Ninth Circuit case by Judge Schwarzer, said where there's no further agency expertise or evaluation that is going to shed light and there's only one answer, we can decide the question. So... There's not only one answer in this case. We can't really get to that point. I'm not asking you to apply the facts, right? We've got to be careful. All I'm saying is that you should... Basically, the CAVC, I think, thought we were basically correct on the record. They said, you may very well be correct about all of this. That there's only evidence on one side and none on the other. That's overwhelming and one-sided and total. But we still can't consider that question. Relying on this court's authority, which I think if you read, you will see that they did not engage in the type of analysis. They did a de novo review. They called it a fact. They didn't say, we're going to look and say no other legal conclusion could be reached. They did a de novo. The other point that I want to make is that on this court, in the veteran's system, this kind of analysis is much more appropriate than in all the other systems, including some where they allow it already, where it's extant, including the conscientious objector board and some of these others. In this situation, it's a proclaimant system. There's a specific statute about preventing unreasonable delay. Just important to the procedure here, there was three times that Lady Byron had to go to the Court of Appeals for Veterans Claims, multiple times to the board. The board keeps refusing to reach this issue, which is staring it in the face. Was the guy there or not? How much do you have to put up? You've got one year left to live. There's a doctor's affidavit in the record. That's enough of a situation to make an exception to say, yes, we're not going to wittingly say you can never look at it because it's the agency. And whether the guy is standing in a location or not doesn't take special agency expertise of any kind. There's eyewitness testimony. There's his wife saying he told me. He took his badge. I saw him go there. He told me about it. There's the veteran's letter himself where he basically tells you that he's there. Look at that. That's a JA-344. There's two other people that said we talked to him in 1954 after he left and he got a job for us by telling us about his experience working on radars at the nuclear tests. If anyone reads this record, I challenge anyone to read this record and believe that this guy wasn't at the nuclear tests. He's making it up. He has five affidavits. Now on this question that there's an issue about whether it was the cause, there's four doctor's affidavits where four doctors say, I reviewed him. This is a rare type of cancer. He got this from his nuclear exposure. What's on the other side? What makes me nervous is on one hand, and this is important to the outcome here in particular, you hear the, oh, this will go to the front of the line when it goes back to the board. And if the applicant doesn't put in any more evidence, we're the ones that have been putting in evidence. If we don't put in any more evidence, we'll make it move a little quicker. But on the other hand, they're suggesting that they're going to submit new evidence where they would get new evidence 40 years later, I don't know. What the record shows in terms of what was agreed upon at two facts that were ignored here. At JA-282, the Army said they could not confirm the presence or absence of the veteran at the site based on the records. So the records that are being identified that they didn't show that he checked in or out, they say what the records show is that you can't confirm one way or the other. And then there's eyewitness testimony and then there's all the, just look at the documents. There's multiple affidavits on the question that lead to only one answer. So JA-282 is the statement that the documentation doesn't show that he wasn't there. They don't know which way it shows. And that's an agreed upon statement at JA-282. The other statement is the Veterans National Personal Records Center, there was a fire in 1973 and the Joint Motion for Remand also records at JA-450 that the veteran's service records had been destroyed, his personnel service records had been destroyed. There are no records that are going to tell us when he was there. And one of the affidavits says all of this was done on oral orders because it was so sensitive national security that it was all done on oral records. That's why you're not going to find it in the documentation. Understood. So you can't look at this record and think that there's really something which requires agency expertise and the bureaucratic ping pong should stop. Thank you. Okay, thank you Mr. Reines and Ms. Hogan. The case is taken into submission. That concludes the arguments for this morning. The court will be adjourned until tomorrow morning at 8 o'clock.